## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH A COYLE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:23-00473-N** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| ***Commissioner of Social Security,***[1] | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Joseph A. Coyle brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for supplemental security income ("SSI") under

---

[1] Martin O'Malley resigned as Commissioner of Social Security effective November 29, 2024, with three individuals thereafter serving as Acting Commissioner for various periods. Frank Bisignano's nomination to be Commissioner of Social Security was confirmed on May 6, 2025, and he began his term of service the following day. *See*:

- https://www.congress.gov/nomination/119th-congress/20 (last visited 9/30/2025)

- https://www.ssa.gov/history/commissioners.html (last visited 9/30/2025)

Accordingly, Bisignano was automatically substituted for former Commissioner O'Malley as the party defendant in this action under Federal Rule of Civil Procedure 25(d), and this change does not affect the pendency of this action. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title of this case on the docket accordingly.

Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon due consideration of the parties' briefs (Docs# 17, 20, 21) and those portions of the certified transcript of the administrative record (Doc# 16) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.    *Procedural Background*

The Social Security Administration ("SSA") found Coyle eligible for SSI based on disability as a child. However, the Social Security laws required that Coyle's eligibility be redetermined after he turned 18 years old. *See* 20 C.F.R. § 416.987. Initial review on such redetermination found that Coyle was no longer disabled as of November 1, 2020, a finding upheld on reconsideration. Coyle thereafter requested, and on April 19, 2022, received, a hearing on the termination of benefits before an Administrative Law Judge ("ALJ") with the SSA's Office of Hearings Operations. On February 28, 2023, the ALJ issued an unfavorable decision in Coyle's case, finding him not entitled to further benefits as of November 1, 2020. (*See* Doc# 16, PageID.84-103).

---

[2] "Title XVI of the [Social Security] Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a)).

[3]    With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs# 14, 15).
     With the Court's agreement, the parties waived the opportunity to present oral argument. (*See* Docs# 23, 24).

The Commissioner's decision on Coyle's termination of benefits became final when the Appeals Council for the SSA's Office of Appellate Operations denied his request for review of the ALJ's unfavorable decision on October 11, 2023. (*Id.*, PageID.68-72). Coyle subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency

factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court "'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible.

Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *Accord Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317–18 (11th Cir. 2021). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d

1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) ("Harner's references to the substantiality of the evidence, the administrative law judge's analysis of her fibromyalgia, and the administrative judge's consideration of her daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.,* *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

"'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as

adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for SSI requires a showing that the claimant is "disabled[,]" 42 U.S.C. § 1382(a)(1)-(2), meaning the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). For adults (i.e., individuals over 18 years of age),

> [t]he Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

For an individual found eligible for SSI as a child (i.e., before attaining age 18) and who was "eligible for such benefits for the month before the month in which [he or she] attained age 18[,]" the Commissioner must redetermine eligibility after he or she turns 18. 20 C.F.R. § 416.987(a). Such redetermination uses the five-step sequential disability evaluation process for adults set out above, except for the "substantial gainful activity" determination in Step One. *Id.* § 416.987(b).

The Social Security "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If an individual meets that burden in Steps Two through Four of the

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

eligibility redetermination evaluation, it then becomes the Commissioner's burden, at Step Five, to prove that the individual is capable—given his or her age, education, and work history—of engaging in other kinds of substantial gainful employment that exist in significant numbers in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Additionally, at every step "the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record."). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276.

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, "'there is no rigid

requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

## III.    *Summary of the ALJ's Decision*

The ALJ first determined that Coyle met all the requirements for mandatory disability redetermination under 20 C.F.R. § 416.987. (Doc# 16, PageID.89). At Step Two,[8] the ALJ determined that Coyle had the following severe impairments since

---

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken in account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the

November 1, 2020: obesity, attention deficit hyperactivity disorder, and borderline intellectual functioning. (Doc# 16, PageID.89). At Step Three,[9] the ALJ found that, since November 1, 2020 Coyle did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc# 16, PageID.89-90).

At Step Four,[10] the ALJ determined that, since November 1, 2020, Coyle had

---

most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about

the residual functional capacity (RFC) "to perform medium work as defined in 20 CFR 416.967(c)[,]"[11] under the following limitations: Coyle "can never climb ladders, ropes, or scaffolds, or work at unprotected heights or with hazardous machinery[;]

> [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "medium" work are as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).

must avoid concentrated exposure to extreme cold, extreme heat, as well as to fumes, odors, dusts, gases, and poor ventilation[;] can frequently interact and respond appropriately with supervisors, coworkers, and can occasionally do so with customers/general public[;] can respond appropriately to work pressures in the usual work setting and to changes in a routine work setting if gradually introduced[;] can use judgment in simple work-related decisions[; and] can understand, remember, and carry out simple instructions." (Doc# 16, PageID.91-96). The ALJ also found that Coyle had no past relevant work. (*Id.*, PageID.96).

At Step Five, after considering testimony from a vocational expert,[12] the ALJ found that, since November 1, 2020, there existed a significant number of jobs in the national economy as a hand packer (200,000 nationally), laundry sorter (250,000 nationally), and machine cleaner (151,000 nationally) that Coyle could perform given his RFC, age, education, and work experience. (Doc# 16, PageID.96-97). Thus, the ALJ found that Coyle's disability ended on November 1, 2020, and that he had not become disabled again since then. (*Id.*, PageID.97).

## IV.  *Analysis*

### a.  **Encopresis**

Coyle first argues that the ALJ reversibly erred in failing to consider his

---

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

encopresis (bowel incontinence) as either a severe or non-severe impairment. No reversible error has been shown on this issue.

Before determining whether a claimant has a severe impairment(s) at Step Two, the ALJ must first determine whether the claimant has "a medically determinable impairment(s)." 20 C.F.R. § 416.921. To be considered "medically determinable," an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by *objective medical evidence from an acceptable medical source*." *Id.* (emphasis added). Importantly, the ALJ "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*

In his opening brief, Coyle cites to "[e]vidence of [his] encopresis…found throughout the record[,]" but each piece of evidence cited is, even by Coyle's own description, either a diagnosis, a medical opinion, or a statement of symptoms by himself or a non-medical third party source (e.g., a family member, a teacher) (*see* Doc# 17, pp.8-9 & n.4 (citing Doc# 16, CM/ECF Electronic Header Page Nos. 69, 410, 412, 451, 459, 488, 491 [PageID.131, 472, 474, 513, 521, 550, 553]))—exactly the kinds of evidence that *cannot* be used to establish a medically determinable impairment. 20 C.F.R. § 416.921.[13] Because Coyle cites "no objective medical

---

[13] The additional evidence he cites in his reply brief is similarly insufficient to establish a medically determinable impairment.

evidence from an acceptable medical source" that would support a finding that his encopresis was "medically determinable," the ALJ did not err in failing to consider it as an additional impairment.[14]

### b.    Social Security Ruling 11-2p

Coyle next claims that the ALJ reversibly erred by failing to discuss Coyle's school records that were submitted into evidence (ALJ Ex. 11F). No reversible error has been shown on this point.

Coyle cites Social Security Ruling (SSR) 11-2p, 2011 WL 4055665 (Sept. 12, 2011),[15] which "explains [the Commissioner's] policy on documenting and evaluating disability in young adults" (i.e., "people between the ages of 18 to approximately 25").[16] Specifically, he cites to section I(C) of that Ruling, which states that "[e]vidence from school programs, including secondary and post-secondary schools, can also help [the Commissioner] evaluate the severity and impact of a young

---

[14] For this reason, the ALJ also did not err in failing to specifically discuss Coyle's subjective complaints regarding his encopresis, since a claimant's subjective statements about his symptoms and their limiting effects must be supported by "a medically determinable impairment(s)" before the symptoms can "be found to affect [the claimant's] ability to do basic work activities…" 20 C.F.R. § 416.929(b).

[15] "A Social Security ruling is an 'agency ruling[ ] published under the authority of the Commissioner of Social Security' and is 'binding on all components of the Administration.' *Sullivan v. Zebley*, 493 U.S. 521, 539 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (internal quotation marks omitted). Although [courts] are not bound by a Social Security ruling, we do afford it deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468-69 (11th Cir. 1994)." *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 n.12 (11th Cir. 2020).

[16] Coyle was 19 years old on November 1, 2020, the date the Commissioner determined his disability had ended. *(See* Doc# 16, PageID.96).

18

adult's impairment(s)[,]" and expressly discusses special education services and Individualized Education Programs (IEPs). SSR 11-2p, 2011 WL 4055665, at **5-6. However, SSR 11-2p does not set any requirement for ALJs to expressly discuss school records in their decisions, and in general "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision…" *Mitchell*, 771 F.3d at 782. And even if the ALJ arguably erred in failing to specifically discuss the school records, Coyle has failed to explain how that failure prejudiced him. As explained below in more detail, generally a claimant must show that any error in an unfavorable decision by the Commissioner was harmful.[17]

### c.    Medical Opinions

Coyle also argues the ALJ reversibly erred in her consideration, or lack of consideration, of certain medical opinions. Again, no reversible error has been shown.

Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. § 416.913(a). The regulations define "medical opinion" as "a statement from a medical source about what [a

---

[17] Coyle does argue the ALJ failed to address an issue of truancy, which he argues could translate into attendance issues at work. The only evidence in the record regarding truancy Coyle cites is not in the school records, though, but in a notation in the July 27, 2020 examination notes by Dr. Cynthia Neville, in a section titled "Legal History," in which Coyle reported "that he was sent to court for truancy in 2020 and 'had to make up credits.' " (Doc# 16, PageID.550). However, there is no indication such truancy was caused by any medical or psychological issue, and Coyle "denied any legal problems currently" to Dr. Neville, indicating the truancy issue was an isolated incident. Coyle has failed to persuasively show that the ALJ reversibly erred in failing to further develop this issue.

claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." *Id.* § 416.913(a)(2). The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … , including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). "When a medical source provides one or more medical opinions … , [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* § 416.920c(c).

"The most important factors … are supportability … and consistency…" *Id.* § 416.920c(a); *accord id.* § 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … , the more persuasive

the medical opinion(s) … will be." 20 C.F.R. § 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." *Id.* § 416.920c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions … in [the] determination or decision." *Id.* § 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions … in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* § 416.920c(b)(3).

### 1.    Dr. Prohaska Opinion

Dr. Mark Prohaska completed a medical opinion following an October 28, 2015 psychological assessment of Coyle as part of Coyle's then-ongoing continuing disability review (Doc# 16, PageID.507-509 [ALJ Ex. 2F]). Coyle argues the ALJ reversibly erred by failing to even refer to Dr. Prohaska's opinion in her decision, much less assess its "supportability" and "consistency."

As Coyle points out, the Social Security regulations state that the Commissioner "will articulate in [the] determination or decision how persuasive [the Commissioner] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R.

§ 416.920c(b). Nevertheless, the Eleventh Circuit has "applied the harmless error doctrine to Social Security appeals." *Edgecomb v. Comm'r of Soc. Sec.*, 841 F. App'x 142, 144 (11th Cir. 2020) (per curiam) (unpublished) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). "Remand is unwarranted unless an error creates fundamental unfairness or prejudice." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1274 n.11 (11th Cir. 2024) (citing *Diorio*, 721 F.2d at 728). *See also, e.g.*, *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (unpublished) ("When…an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." (citing *Diorio*, 721 F.2d at 728)). " '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.' " *Raper*, 89 F.4th at 1274 n.11 (quoting *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317–18 (11th Cir. 2021)).

Coyle has failed to show that the ALJ's failure to address Dr. Prohaska's opinion was anything more than harmless error. *See Caldwell*, 261 F. App'x at 190 (finding ALJ's failure to discuss the weight given to a medical opinion to be harmless error "because the application of [the opinion]'s limitations would not have changed the result"). Dr. Prohaska's medical opinion was from over 5 years before Coyle's disability cessation date, and Coyle has not explained how any of the limitations in Dr. Prohaska's opinion would change the ALJ's ultimate conclusions—indeed, most of the limitations Coyle cites appear consistent with those conclusions, or duplicative of other evidence. Coyle cites the fact that Dr.

Prohaska assessed Coyle with a full-scale IQ score of 78 (Doc# 17, p.5), but the ALJ discussed another IQ test given in July 2020 that returned a full-scale score of 75. (*See* Doc# 16, PageID.93). Coyle cites Dr. Prohaska's finding that Coyle's "intellectual ability falls within the borderline range of intellectual disability" (Doc# 17, p.5), but the ALJ found that to be a severe impairment at Step Two. Coyle also cites Dr. Prohaska's opinion that Coyle's "career opportunities will likely be limited to unskilled positions that place few demands on higher-order reasoning or conceptualization skills" (*id.*, p.6), but that appears consistent with the RFC's limiting Coyle to "simple work-related decisions," "simple instructions," and to "gradually introduced" change in workplace routine.

### 2.    Dr. Lowery's Report

Coyle next argues that the ALJ erred in failing to obtain a 2010 report from Dr. Dan Lowery, which was referenced in Dr. Prohaska's opinion. While "the ALJ has a basic duty to develop a full and fair record[,] the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276. Even when an ALJ's obligation arises to "a special duty" in the case of unrepresented claimants—as Coyle was before the ALJ—the claimant still must show any failure to develop the record caused "evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) (per curiam). Here, Coyle has not shown that any unfairness or clear prejudice resulted from the ALJ's failure to obtain Dr. Lowery's report. While Coyle refers to the report as an "opinion," there

23

is no indication that the report actually meets the definition of a medical opinion under the Social Security regulations, as Dr. Prohaska only cited Dr. Lowery's report to note that it assessed Coyle with a full-scale IQ score of 75. Moreover, that report was from 10 years before the disability cessation date, and the IQ score it assessed is cumulative of the July 2020 IQ assessment noted above.

### 3. Dr. Estock's 2015 Findings

The record contain two prior administrative medical findings from state agency reviewer Dr. Robert Estock, one from 2015 and the other from 2020.[18] Coyle argues the ALJ reversibly erred by failing to discuss Dr. Estock's 2015 findings, he has failed to show that any such error was harmful. Much like Dr. Prohaska's medical opinion, Dr. Estock's 2015 findings were from over 5 years before Coyle's disability cessation date. Moreover, as a state agency reviewer, Dr. Estock's findings were based on a review of the evidence available to him at the time, rather than on personal examination of Coyle. Thus, Dr. Estock's 2020 findings incorporated more recent evidence that was relevant to determining when Coyle's disability ended.

---

[18] While both parties refer to Dr. Estock's findings as "medical opinions," they are more appropriately considered "prior administrative medical findings" under the Social Security regulations. *Compare* 20 C.F.R. § 416.913(a)(5) *with id.* § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section."). Regardless, any misnomer is harmless, as both medical opinions and prior administrative medical findings are evaluated the same for all purposes relevant to this decision. *See generally* 20 C.F.R. § 416.920c.

#### 4.     Bettye A. Cleveland's Opinion

In evaluating the opinion evidence, the ALJ stated:

Bettye A. Cleveland, M.S., Ed.S. opined that the claimant is capable of performing at the unskilled-skilled level of employment. (11F/25) The undersigned finds Ms. Cleveland's opinion unpersuasive. Although she supported her opinion with a detail functional capacity examination, the medical evidence of record is consistent with adaptive and social limitations. For example, Dr. Neville observed that the claimant presented with immaturity and his aunt explained that he needs reminders to completing activities of daily living. (7F; 13E)

(Doc# 16, PageID.94).

Coyle complains that ALJ's decision "only addressed a contingent conclusion of the opinion, but not the more practical limitations[,]" such as her opinion that Coyle "would need 'Further hygiene and grooming skills' before interviewing and job placement." (Doc# 17, p. 19). However, the ALJ had rejected any additional limitations based on similar opinions provided by examining psychologist Dr. Cynthia Neville, based on evidence showing that Coyle "had clean appearance, cooperative, calm, and pleasant behavior, fluent and clear speech, intact memory, average intelligence, euthymic mood, happy and euphoric affect, intact insight, intact judgment, intact thought processes, and unremarkable thought content, when he saw his own provider…" (Doc# 16, PageID.94). Thus, it is reasonably apparent from the ALJ's decision that Ms. Cleveland's opinion was found not persuasive for the same reasons.[19]

---

[19] In his reply brief, Coyle raises additional claims regarding the ALJ's purported failure to develop the record. Raising arguments for the first time in a reply brief is

No reversible error having been shown, the Court finds that the Commissioner's final decision terminating Coyle's entitlement to SSI benefits is due to be **AFFIRMED**.

### V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision terminating Coyle's entitlement to SSI benefits as of November 1, 2020, is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Judgment in accordance with this order shall hereafter be set out by separate document, in compliance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **30th** day of **September 2025**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

highly disfavored, deprives non-movants of an opportunity to address them, and generally results in waiver or forfeiture of those arguments. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005); *Ceccanti v. Thomas*, No. 1:21-CV-195-TFM-MU, 2023 WL 4317649, at *7 (S.D. Ala. May 9, 2023) (Moorer, J.). The undersigned finds that these claims could have been raised in Coyle's opening brief, and that Coyle has not shown good cause for raising them for the first time in his reply. Accordingly, Coyle has forfeited those additional claims of error, and the undersigned declines to consider them.